**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

AMERIQUEST MORTGAGE COMANY,

    Plaintiff,

v.

ANTHONY C. SAVALLE ,
DEBRA L. SAVALLE, husband and
wife, EMCC, INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
IN., HOMECOMINGS FINANCIAL
NETWORK, INC., and UNITED STATES
DEPARTMENT of TREASURY--INTERNAL
REVENUE SERVICE,
    Defendants.
                                                     /

NO. 07-14574

HON. MARIANNE O. BATTANI

**ORDER GRANTING UNITED STATES OF AMERICA'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on the United States of America's Motion for Partial Summary Judgment. The Court heard oral argument on February 24, 2009, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow the motion is **GRANTED**.

**I. FACTS**

Plaintiff, Ameriquest Mortgage Company filed this action to foreclose on property commonly known as 88 Sunningdale, Gross Pointe, Michigan. The United States claims federal tax liens on the property and counterclaimed to reduce to judgment tax liabilities assessed against the owner of the property, Anthony C. Savalle.

Savalle and two other men, Al Sandelman and Terry Wallace, started Design Electro Linc, Inc. ("DEL"), a business that conducted design and manufacturing services. See Def.'s Ex. 6, Dep. of Anthony Savalle at 94. Eventually Savalle became owner of seventy-five percent of the stock and president of the company, a position he held until June 30, 2000. Id. at 90. As president, Savalle hired and fired employees, handled the day-to-day

business, negotiated with vendors, and made purchasing decisions.  Id. At 102-120.

In addition, Savalle had authority, in conjunction with his business partners, to take out loans on behalf of DEL.  Id. at 131.  He and Wallace secured a line of credit, and Savalle personally guaranteed the line of credit by putting up his house as collateral.  Id. at 144.  He could open and close bank accounts on behalf of DEL, sign check on its behalf, and had the authority to give vendors a priority in getting paid.  Id. at 132-155.  While Savalle was the majority owner of DEL, he hired accountants and made sure that DEL filed annual state and federal income tax returns.  Id. at 91.  He hired the in-house accountants and reviewed statements on a monthly basis.  Id. at 92, 97, 151.  The in-house accountants provided CPA firms with financial information and the firms prepared DEL's tax returns, which Savalle reviewed and signed.  Id. at 92.

Further, Savalle could authorize payroll to be paid through a payroll service and also could authorize payments of federal tax depositions.  Id. at 156.  Savalle admits that the knew of DEL's obligation to withhold taxes.  Id. at 159.  With regard to the payroll tax liabilities for the quarter ending March 31, 2001, Savalle testified that "days after the quarter was over," the National Bank of Detroit contacted him regarding a balance owed to the IRS for the quarter.  Id. at 141.  According to Savalle, DEL's accountant at that time, Leann Slatina, decided not to pay the payroll withholding taxes for that quarter.  Id. at 135.  The IRS contacted Savalle about the liability and sent him notices, but Savalle did not pay the liability because "business was pretty low, and so there w[ere] no extra funds to catch up on anything."  Id. at 143-44.  During the time that DEL did not pay the tax liability, it paid other bills.  Id. at 147-48.

As DEL was winding down, the directors of global purchasing with Delphi Automotive approached Savalle with their interest in conducting business with a "certified minority company."  Id. at 167-68.  At the same time, John Henderson, an African American, was approached by Visteon with a similar opportunity.  Id., at 167-68.  The prospective business

2

hinged on certification by the Michigan Minority Business Development Council.  Id. Consequently, on July 24, 2001, Savalle and Henderson and Avenue Q Investments entered into an agreement resulting in the birth of Jupiter Engineering and Electronics ("Jupiter").  Id. at 175.  Jupiter, which was developed to take advantage of the opportunities presented by Visteon and Delphi, manufactured electronic modules for the automotive industry.  Id. at 167-168.  Henderson owned a 51% interest in Jupiter.  Id. at 165.  Savalle received a 10% interest in exchange for a loan to the company, and became the Chief Operating Officer.  Id.

Savalle had hiring and firing authority.  Id. at 194.  He participated in Jupiter's member meetings.  Id. at 187.  For example, at a May 7, 2002, Special Member Meeting, Savalle made motions and voted on resolutions regarding tax filings, actions to achieve minority status, loan agreements, and negotiation of bank terms.  Def.'s Ex. 14.  Savalle had authority to endorse checks and orders for the payment of money or otherwise withdraw or transfer funds on deposition.  Id.

In June 2002, Savalle and Henderson agreed on behalf of Jupiter to acquire Avenue Q's shares in the company.  In late 2002, Syed Chowdhury acquired Jupiter shares and after redistribution, Savalle had a thirty-four percent ownership interest.  Def.'s Ex. 6 at 178. Savalle testified that he wanted to end Henderson's control of the company.  Id. at 180. In November 2002, the three owners agreed that Savalle would serve as President of Jupiter until December 17, 2002.  Savalle and Chowdhury terminated Henderson's employment with the company on March 24, 2003.  Id. at 187-86.

It is undisputed that Savalle had signature authority on three of Jupiter's checking account during the time the taxes were not paid.  Savalle stated that in 2003, he permitted funds to be paid to Westland Electronics and Engineering, L.L.C., a company for which Savalle was president and manager.  In 2003, Savalle offered the accounts receivables of Westland to pay a personal guaranteed he made on a loan to Jupiter.  Def.'s Ex. 19, 20.

3

Savalle admitted that he was aware of Jupiter's obligation to withhold payroll taxes. Id. at 232. He likewise admitted that he became award that Jupiter's payroll taxes had not ben paid near the end of 2002. Id. at 235. He never made any payments to the IRS on the payroll tax liability. Id. at 233.

On September 10, 2001, a delegate of the Secretary of the Treasury made an assessment against Savalle of a penalty pursuant to 26 U.S.C. § 6672 for his willful failure to collect, truthfully account for, and pay over income and Federal Insurance Contributions Act ("FICA") taxes withheld from employees of DEL for the tax period ending March 31, 2001. Def.'s Ex. 5. On March 21, 2007, another penalty was assessed against Savalle for his failure to collect, account for and pay over income and FICA taxes withheld from employees of Jupiter for the tax periods ending September 30, 2002, and December 31, 2002. Id. Further, on these dates of assessment, a delegate of the Secretary of the Treasury gave notice of the assessments to and made a demand for payment of the assessments upon Savalle. Id. Savalle has failed to fully pay the assessments, interest, and other statutory additions that have accrued. Id.

## II.     STANDARD OF REVIEW

Rule 56(c) states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show that it would prevail on the issue even if all factual disputes are conceded to the nonmovant. Additionally, for the purposes of deciding on a motion for summary judgment, a court must draw all inferences from those facts in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**III.     ANALYSIS**

Under the Internal Revenue Code ("IRC"), an employer is required to withhold social security taxes and income taxes form the wages paid to its employees.  26 U.S.C. §§ 3201(a), 3402(a).  Employers also pay over their own contributions to the social security system.  See 26 U.S.C. § 3111.  These withholding are held by the employer in trust for the government.  26 U.S.C. § 7501(a).  The employer reports the amount of withhold taxes on its payroll tax return.  (Form 941).  The form must be filed every calendar quarter.  26 C.F.R. § 31.6011(a)-4(a)(1).  Here, the money was due on the last day fo the first month following each of the quarters at tissue.   26 C.F.R. § 31.6071(a)-1(a).  The taxes were not paid.

One means by which the government can ensure that withheld taxes eventually are collected and paid over to it is 26 U.S.C. § 6672.  Under 26 U.S.C. § 6672(a),

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who wilfully fails to collect such tax, or truthfully account for and pay over such tax, . . . shall, . . . be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

For liability to attach, two statutory requirements must be met: (1) a person must be a "responsible person" and (2) he must "willfully" fail to pay the amount due.  Gephart v. United States, 818 F.2d 469, 473 (6th Cir. 1986).  An IRS assessment under 26 U.S.C. § 6672 is presumptively correct and the person against whom an assessment is made has the burden of showing that he was not a responsible person or that his failure to pay the withholding taxes was not willful.  Collins v. United States, 848 F.2d 740, 742 (6th Cir. 1988).

The United States contends that Anthony C. Savalle is liable for the assessments against DEL and Jupiter because there is no genuine issue of material fact that he is a responsible person under the statute who willfully failed to pay the amount due. This Court discusses the assertions below.

5

**A. DEL**

**1. Is Savalle a Responsible Person?**

To determine whether an individual is a responsible person, a court looks at "the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursement of funds and the priority of payments to creditors." Gephart, 818 F.2d at 473 (citing United States v. Davidson, 558 F. Supp. 1048, 1052 (W.D. Mich. 1983)).  Significant control is all that is necessary. Id.  The Sixth Circuit has identified five factors relevant to the assessment of responsibility against an individual:

> (1)  the duties of the officer as outlined by the corporate by-laws;
>
> (2)  the ability of the individual to sign checks of the corporation;
>
> (3)  the identity of the officers, directors, and shareholders of the corporation;
>
> (4)  the identity of the individuals who hired and fired employees;
>
> (5)  the identity of the individuals who are in control of the financial affairs of the corporation.

Kinnie, 994 F.2d at 283 (citations omitted).

Anthony Savalle was the president of DEL, a seventy-five percent shareholder and owner.  He possessed the authority to sign checks on behalf of the company and did sign checks.  He supervised employees and the day-to-day operations of the company.  He had the ability to hire and fire employees.

Although Savalle maintains a payroll company handled the payment of payroll and trust fund taxes and that an accountant oversaw payroll activities, the delegation does not alter his status as a responsible person in light of governing case law.   Specifically, more than one person may satisfy the requirements necessary to be held a responsible person within a corporation.  Kinnie, 994 F.2d at 284 (citing Gephart, 818 F.2d at 473).  Consequently, "one who possesses significant control over the company's financial affairs

may not escape liability by delegating the task of paying over the taxes to someone else." Kinnie, 994 F.2d at 284 (citing Gustin v. IRS, 876 F.2d 485, 491 (5th Cir. 1989)); Thomsen v. United States, 887 F.2d 12, 17 (1st Cir. 1989). "Responsibility is a matter of status, duty and authority." Gephart, 818 at 473. "Authority turns on the scope and nature of an individual's power to determine how the corporation conducts its financial affairs; the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so." Purcell v. United States, 1 F.3d 932 (9th Cir. 1993).

During the relevant time frame, the first quarter of 2000, Anthony Savalle was an officer and owner of DEL; he acted as President. He was a signatory on the company checking accounts. His status as president of the corporation and his authority to sign checks unequivocally demonstrate his ability to pay the taxes. See Denbo v. United States, 988 F.2d 1029, 1033 (10th Cir. 1993) (holding that the plaintiff was responsible because "[h]is financial involvement in the corporation, along with his check-signing authority, gave him the effective power to see to it that the taxes were paid"). The majority of the Gephart factors point toward a finding of responsibility. The Court, having determined that Savalle is a responsible person under the statute as a matter of law, now turns to the second factor, willfulness.

### 2. Was Savalle's conduct willful?

Willfulness is established if the responsible person "had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the Government." Kinnie, 994 F.2d at 284 (quoting Gephart, 818 F.2d at 475). The record in this case establishes Savalle's knowledge of the delinquency and his decision to use company money for other debts.

There is no dispute that Savalle was aware of and understood DEL's obligation to withhold taxes. He leaned of the payroll tax liability within days of the end of the quarter in issue, yet never attempted to make payments on the liability. Savalle Dep. at 141, 147-

50. Because there was no money to pay the trust fund tax liability, other bills were paid. Id. This excuse does not insulate Savalle from his responsibility. Consequently, the Court finds that the record shows that Savalle acted willfully: he was aware of the delinquent taxes at the time that he paid other creditors.

**B. Jupiter**

### 1. Is Savalle a responsible person?

The evidence also supports a finding as a matter of law that Savalle was a responsible person with regard to Jupiter during the third and fourth quarters of 2002. He was the chief operating officer and second in command to Henderson. He had hiring authority, signature authority on checking accounts during the relevant time frame, participated in decisionmaking and voted on financial and operating issues. He obtained and guaranteed a loan for Jupiter, was a shareholder and officer, and eventually terminated Henderson's employment with Jupiter.

His status is not altered by the fact that he did not write checks or because Henderson may have been responsible for finances as well. Inherent authority to exercise financial control, not merely the actual exercise of authority, satisfies the standard. Kinnie, 771 F. Supp. at 849. Savalle testified that he could ensure payment of his salary. Def.'s Ex. 6 at 208, 210.

### 2. Was Savalle's conduct wilful?

The evidence also shows as a matter of law that Savalle's failure to assure payment of the withheld taxes was willful. In light of the situation with DEL, Savalle could not have been ignorant of Jupiter's obligation to withhold taxes. He learned of Jupiter's liabilities at least by late 2002. Id. at 235.

The record shows that Savalle participated in financial decisions on behalf of Jupiter. He had signature authority on the checking accounts and the ability to endorse orders for the payment of money or withdrawals or transfers of funds, yet he never paid the IRS.

Jupiter continued to operate well after the time Savalle became aware of the failure to pay over the withheld contributions.

Even if Savalle did not know about the tax delinquency until after the date for timely payment expired, he was responsible when the taxes accrued. Under Kinnie, 994 F.2d at 285, once the knowledge is acquired, a responsible person acts willfully if he does not pay the taxes before other creditors. In that regard, the record shows that in 2003, after learning of the tax liabilities, Savalle allowed Jupiter's accounts receivables to be paid to the company he owned, Westland Electronics and Engineering. Savalle then used the money to satisfy the personal guaranty he executed in conjunction with a loan to Jupiter.

Based on this evidence, the Court finds that Savalle's failure to pay the taxes was willful.

## IV. CONCLUSION

For the above-stated reasons, the Government's Motion for Partial Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: July 9, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Deputy Clerk