**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AMERIQUEST MORTGAGE COMPANY,

        Plaintiff,                             NO. 07-14574

v.                                         HON. MARIANNE O. BATTANI

ANTHONY C. SAVALLE ,
DEBRA L. SAVALLE, husband and
wife, EMCC, INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., HOMECOMINGS FINANCIAL
NETWORK, INC., and UNITED STATES
DEPARTMENT of TREASURY--INTERNAL
REVENUE SERVICE,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART**
**AMERIQUEST MORTGAGE'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING DEFENDANT HOMECOMINGS FINANCIAL LLC AND MORTGAGE**
**ELECTRONIC REGISTRATION SYSTEMS' MOTION FOR SUMMARY JUDGMENT**
**AS TO ANTHONY C. SAVALLE AND DEBRA L. SAVALLE AND MOTION FOR**
**SUMMARY JUDGMENT AS TO AMERIQUEST MORTGAGE COMPANY**

This matter is before the Court on the parties' dispositive motions.  In this

litigation, multiple partes claim interest in residential property located at 88 Sunningdale

Drive, Gross Pointe Shores, Michigan, owned by Anthony C. Savalle, and his wife,

Debra L. Savalle.  Ameriquest Mortgage Company ("Ameriquest") claims an interest

pursuant to a mortgage that was executed, but not recorded, on January 24, 2004;

Homecomings Financial LLC through it nominee, Mortgage Electronic Registration

Systems ("MERS"), claims an interest  in the property pursuant to a mortgage dated

July 28, 2006, that was recorded on August 15, 2006, and the United States of America

claims an interest pursuant to federal tax liens on the property.  For the reasons that

follow, the Court **GRANTS** in part and **DENIES** in part Ameriquest Mortgage Company's

Motion for Summary Judgment (Doc. No. 57); **DENIES** Homecomings Financial LLC

and Mortgage Electronic Registration System's Motion for Summary Judgment Against

Ameriquest Mortgage Company (Doc. No. 58), and **DENIES** Counterplaintiff

Homecomings Financial, LLC's ("Homecomings") Motion for Summary Judgment

against Counterdefendants Anthony C. Savalle and Debra L. Savalle (Doc. No. 60).

## I. STATEMENT OF FACTS

### A. Ameriquest's mortgage

Ameriquest's relationship with Savalles began in 2001, when they entered into a

note and mortgage agreement.  Savalles refinanced in 2004.  Specifically, in January

2004, Anthony Savalle signed a Uniform Loan Application seeking a close-out refinance

of his 2001 Note and Mortgage, see Ameriquest's Ex. 4, in the amount of $600,000 to

pay off the existing Note and provide him with funds to pay other creditors.

On January 24, 2004, Mr. Savalle signed the Note.  Ameriquest's Ex. 6.  Anthony

and Debra Savalle signed a mortgage, pledging it as security for the Note.

Ameriquest's Ex. 7.  Although Mrs. Savalle testified that she does not remember the

transaction, she concedes the signature on the documents appears to be hers.

Ameriquest's Ex. 8.

Mr. Savalle paid the monthly mortgage until May 2006.  He stopped all payments

in December 2006.  Ameriquest's Ex. 10.

2

In preparation for filing this foreclosure action, Ameriquest conducted a title search and discovered it never recorded the 2004 mortgage.  It further discovered that Homecomings held a $650,000 mortgage on the Sunningdale Drive property, that the IRS had a tax lien recorded February 5, 2002, in the amount of $160,888.04, and another tax lien, in the amount of $66,456.84, was recorded on May 1, 2007. Ameriquest then recorded a Notice of Lis Pendens placing its mortgage interest on record.  On August 2, 2007, when Ameriquest filed its complaint, Anthony Savalle had been in default on his Note since December 2006.

**B.  Homecomings' mortgage**

In its December 26, 2007, Answer and Counterclaim, Homecomings alleges Mr. Savalle ceased making payments on its July 28, 2006 Adjustable Rate Note ("ARN") in August 2007.   The ARN is secured by a properly recorded mortgage, which was recorded with the Wayne County Register of Deeds on August 15, 2006. Homecomings' Ex. F.  It is undisputed that Mr. Savalle stopped making payments on the ARN in August 2007, after Ameriquest filed this lawsuit.

The facts and circumstances culminating in the ARN and mortgage are neither run-of-the-mill or without controversy.  Savalles wanted to use the money to pay delinquent property taxes.  According to Mr. Savalle, Chad Buchanan, a mortgage broker, had recommended that Mr. Savalle seek assistance from a person with better credit.  Homecomings' Ex. E, p. 7.  Mr. Savalle used his father's social security number on the Uniform Residential Loan Application.  See Homecomings' Ex. C.  Moreover, Mr. Savalle testified that although he was surprised when the paperwork reflected a $650,000 loan, not a $10,000 loan, he signed the ARN because of the tax deadline.

3

Savalles' Ex. A at 274.  Buchanan indicated that the excess funds would be used to pay off the Ameriquest mortgage.  Mrs. Savalle asserts that she never signed the note, and that she refused to sign the mortgage when she realized it was for more than the amount needed to pay the delinquent property taxes.  Savalles' Ex. F at 66, 68.

After learning that his wife refused to sign the ARN, Mr. Savalle contacted Buchanan, who indicated that the deal could not be redone because monies were already disbursed.  Buchanan also informed Mr. Savalle that his wife's signature was not needed because Mr. Savalle's father's credit was excellent.  Savalles' Ex. A at 331. Mr. Savalle testified that days later he learned that Buchanan took monies from the closing proceeds and that Ameriquest was not paid off.  Savalles' Ex. A at 327.

Mr. Savalle's testimony that Buchanan took over $160,000 of the proceeds from the July 28, 2006 Note, Cross-Claim, ¶ 9, is contested.  The Settlement Statement, line 104 indicated that $646,002.18 went to Washington Mutual to pay off a mortgage on the property.  Homecomings' Ex. H.  The statements also verifies that $11,150.80 went to settlement charges and the remaining $10,702.71 was cash to the borrower.  Id.  Mr. Savalle signed the document titled, "Acknowledgment of Receipt of Settlement Statement.  Id.  Further, Homecomings provides a wire transfer confirmation that verifies the amount sent to Washington Mutual on August 2, 2006.  Homecomings' Ex. I. Finally, on August 15, 2006, a Certificate of Discharge was recorded with the Wayne County Register of Deeds, discharging the Washington Mutual mortgage on the Sunningdale Drive property.   Homecomings' Ex. J.

Mr. Savalle asserts that Buchanan promised to repay the money--$158,213, and make the mortgage payments to Ameriquest and Homecomings, and to turn a $200,000

4

profit.  A memo signed by Buchanan and Mr. Savalle, dated August 26, 2005,[1] indicates

that there is $158,213 remaining from the closing and that Buchanan will "use these

funds to invest with myself on several properties."  Savalles' Ex. H.  Buchanan

"guaratee[s] to turn a profit of $200,0000.00 and pay [Savalle] $358,213 and cover the

mortgage payment until the sum of $382,213 is paid in full."  Id.  Mr. Savalle claims he

agreed to this arrangement because it was the road of least resistence.

## II.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment

may be granted when "the pleadings, the discovery and disclosure materials on file, and

any affidavits, show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  In Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986), the United States Supreme Court stated:

> In our view, the plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery and upon motion,
> against a party who fails to make a showing sufficient to establish the
> existence of an element essential to that party's case, and on which that
> party will bear the burden of proof.

The movant bears the burden of demonstrating the absence of all genuine issues

of material fact.  Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).

"[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out

to the district court–that there is an absence of evidence to support the nonmoving

party's case."  Celotex, supra at 325.

Once the moving party carries that burden, the burden shifts to the nonmoving

---

[1]The memo is dated a year before the Homecomings' mortgage was executed.

party to set forth facts showing a genuine triable issue.  Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).  "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."  Anderson v. Liberty Lobby Inc., 477 U.S. 242,  256 (1986).  The court should view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor.  Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, supra at 249-50.  "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The evidence itself need not be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits.  Smith v. Campbell, 250 F.3d 1032, 1036

6

(6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  <u>Anderson</u>, <u>supra</u> at 252.  Also, where the non-moving party must meet a higher burden of proof than usual, that party must meet the same burden in resisting the motion for summary judgment.  <u>Id.</u>

## III.   ANALYSIS

### A. Has Mr. Savalle breached his contract with Ameriquest?

There is no dispute that Mr. Savalle borrowed $600,0000 from Ameriquest and failed to pay under the terms of the Note.   Even accepting Savalle's rendition of the underlying facts, Ameriquest is entitled to summary judgment on its breach of contract claim.  It is undisputed that Anthony Savalle entered into an Adjustable Rate Note (ARN) and Mortgage with Ameriquest in January 2004 and failed to make monthly payments under the Note.  In sum, there is no genuine issue of material fact that Anthony Savalle failed to pay on the Note under the terms agreed to by the parties.

Savalles' reliance on fraudulent conduct by Buchanan as a basis for challenging the obligation is unavailing.  Mr. Savalle testified that his signature on federally mandated documents related to the 2004 loan which had to be signed before the loan is issued, for example good faith estimate and truth in lending servicing disclosure statements, were forged.  Savalle's Ex. M.  To bolster his claim about forgery, he notes that during discovery, two other mortgages were found that neither of the Savalles signed–the Argent Mortgage and the S&N Mortgage.

Although Mr. Savalle argues he did not sign documents mandated by the federal government, he provides no authority or persuasive analysis to show that this failure

provides a defense undermining his liability.

In addition to the issue raised regarding Mr. Savalle's signature, the Savalles challenge the legitimacy of Mrs. Savalle's signature.  The Court finds the argument sheer speculation.  Mr. Savalle testified that he did not recognize his wife's signature on the mortgage, that her signature appears to be inconsistent with the way she signed other documents, and that this inconsistency becomes more suspect because Mrs. Savalle's signature was forged on another mortgage.

Savalles' argument fails to create a genuine issue of material fact.  Mrs. Savalle testified that she did not remember whether she signed the mortgage, but admits she probably did.  The Savalles paid on the mortgage, and their signatures are notarized.  Accordingly, the Court finds Ameriquest is entitled to summary judgment on this claim.

**B.  Has Mr. Savalle breached his contract with Homecomings?**

Homecomings maintains that Mr. Savalle breached their contract and that it is entitled to foreclose on the mortgage.  There is no dispute that the ARN required Mr. Savalle to make monthly payments in the amount of $2,484.60 until September 2011, at which time the minimum monthly payment may change.  Mr. Savalle paid on the ARN for twelve months, from September 2006 through August 2007.  Homecomings' Ex. K.  Homecomings had not received a payment since August 30, 2007, when Ameriquest filed this lawsuit.

In defense of the failure to pay, the Savalles challenge the validity of the mortgage documents:  Mr. Savalle asserts that he did not sign on behalf of himself, and Mrs. Savalle asserts that her signature is forged.  The Court finds the first assertion immaterial, but finds that the second prevents an award of summary judgment.

8

Specifically, Mr. Savalle's claim that he did not sign the ARN in his individual capacity is undermined by the record.  First, and most importantly, the mortgage document itself identifies the borrowers as Anthony Savalle and Debra L. Savalle, Husband and Wife.  Id. at p. 1, 15.  Although Mr. Savalle testified that he executed two powers of attorney for his father, one of which was prior to closing, Savalle Dep. at 252, the document provided in discovery is dated after the mortgage closing.  Because the power of attorney document he produced was created nearly two months after he executed the ARN, it does not constitute evidence to show he had the authority to act as power of attorney for his father.  Even if he did execute a document prior to the closing, none of the mortgage documents indicated he acted in that capacity.  Accordingly, his contention to the contrary demonstrates only his belief that he was not liable; it does not create a genuine issue of material fact as to his obligation to Homecomings.

In contrast, Mrs. Savalle's contention that her signature was forged is material.  The validity of Homecomings' mortgage turns on whether Mrs. Savalle signed the mortgage and consequently agreed to be liable for the indebtedness.  Although her signature was notarized, and a notary's certification raises a presumption of the truth of the facts recited in the acknowledgment, her unequivocal testimony creates a factual issue for the jury.  See MICH. COMP. LAWS. § 55.307.

The Court's conclusion is not altered by Homecomings' challenge of Mrs. Savalle's veracity.  It argues that she knew payments were being made on the Homecomings' mortgage yet never disputed the validity of the mortgage until this law suit was filed.  This challenge is not one that is appropriate for the Court to decide on a

9

summary judgment motion.

In the alternative, Homecomings argues that it is entitled to an equitable mortgage, even if Mrs. Savalle's signature is forged. It maintains that Savalles received the benefit of the mortgage because the proceeds were used to pay off an outstanding mortgage held by Washington Mutual. It is not clear what, if any, benefit Savalles received in light of their claim they were unaware of the Washington Mutual mortgage, and that the mortgage is invalid. According to the Savalles, Buchanan, who acted as an agent for Homecomings, took the money and did not pay off the Ameriquest mortgage. The facts create an inference that Buchanan acquired mortgages on the property from several other mortgage companies and forged their names.

Accordingly, there is no basis for the Court to conclude that Debra Savalle was involved as a matter of law, or that she received a benefit from the Homecomings mortgage. Homecomings' request for summary judgment against the Savalles is denied.

### C.  Priority of Homecomings' and Ameriquest's mortgages

Ameriquest and Homecoming dispute the priority of their mortgages. Although Ameriquest executed its mortgage on January 24, 2004, well before Homecomings entered into a mortgage agreement with Savalles, Ameriquest never recorded the mortgage with the Wayne County Register of Deeds. Consequently, on July 28, 2006, when Homecomings loaned $650,000 to Anthony C. Savalle, evidenced by an Adjustable Rate Note executed by Mr. Savalle, it did so without knowledge of the previous mortgage on the Sunningdale Drive property. The Homecomings' mortgage was recorded on August 15, 2006. Homecomings' Ex. D, p. 1. Almost a year later, on

10

August 3, 2007, Ameriquest filed a Notice of Lis Pendens.

The mortgage companies disagree as to the validity of Homecomings' mortgage. In the alternative, they dispute the applicable recording date of an equitable mortgage, if the Court were to find in Homecomings' favor on its entitlement.

"Michigan is a race-notice state, and owners of interests in land can protect their interests by properly recording those interests." Richards v. Tibaldi, 726 N.W.2d 770, 780 (Mich. Ct. App. 2006) (citation omitted). Pursuant to Michigan race/notice statutes, "the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." Graves v. Am. Acceptance Mortgage Corp., 630 N.W.2d 383, 386 (Mich. Ct. App. 2001), rev'd on other grounds 677 N.W.2d 829 (Mich. 2004). A recorded conveyance serves as "notice to all persons except the recorded landowner. . .of the liens, rights, and interests acquired by or involved in the proceedings. All subsequent owners or encumbrances shall take subject to the perfected liens, rights, or interests." MICH. COMP. LAWS § 565.25(4). In addition, under the statute, a conveyance of real estate not recorded "shall be void as against any subsequent purchaser in good faith and for valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded." MICH. COMP. LAWS § 565.29.

Under state law, the first recorder takes priority. Homecomings may take priority over Ameriquest provided it can establish a valid mortgage. Although "Michigan's race-notice recording statute is the basis for determining priority of liens, [ ] the court's equitable powers [may] be used to circumvent the statute" given "unusual circumstances like a preexisting interest in the property, fraud, or mutual mistake."

11

Washington Mut. Bank v. Community Shores Bank, No. 2774959, 2007 WL 3122249 (Mich. Ct. App. Oct 25, 2007) (citing  Ameriquest Mortgage Co. v. Alton, 731 N.W.2d 99, 106 (Mich. Ct. App. 2006)).

Ameriquest seeks to circumvent the statute.  Here, there are factual disputes that prevent the Court from deciding as a matter of law that Homecomings is entitled to an equitable mortgage.  In this case, the parties dispute the role/status of Buchanan: Savalles claim he was an agent of Homecomings; Homecomings asserts Buchanan was Savalles' agent.  According to Homecomings, Mr. Savalle had a business relationship with Buchanan dating back to 2001.  Homecomings' Ex. D at 31.  Neither the existence of a prior relationship nor the fact that Mr. Savalle contacted Buchanan establishes as a matter of law that Buchanan acted as Savalles' agent.

Given the unresolved factual disputes, the Court declines to rule on the issue of priority.  The Court rejects Ameriquest's assertion that should Homecomings succeed on its contention that it is entitled to an equitable mortgage, it would have to re-record its interest, thereby placing Ameriquest's mortgage ahead of Homecomings.  See  Bryce v. Jones, 221 N.W.2d 433 (Mich. Ct. App. 1974), rev'd on other grounds 230 N.W.2d 272 (Mich. 1975).

## IV.  CONCLUSION

Now therefore, the Court **GRANTS** Ameriquest's motion for summary judgment against Anthony Savalle on the breach of contract claim, but **DENIES** summary judgment on its priority claim against Homecomings.  The Court **DENIES** both Homecoming's motions for summary judgment, given the existence of genuine issues of

12

material fact.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: August 7, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to Counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Deputy Clerk

13